IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


ALFRED YOUNG, et al.,            §
                                 §
            Plaintiffs,           §
                                 §
v.                               §        CIVIL ACTION NO. H-03-1213
                                 §
MERCK & CO., INC.,               §
                                 §
            Defendants.           §


**MEMORANDUM OPINION AND ORDER**


Plaintiffs, Alfred Young, Jody Collins, and Michelle Henderson bring this action against defendant, Merck & Co., Inc. (Merck), for employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, et seq. Henderson also asserts a claim against Merck under the Age Discrimination in Employment Act (ADEA), 42 U.S.C. § 621, et seq. On April 29, 2005, Magistrate Judge Nancy K. Johnson entered a Memorandum, Recommendation, and Order (Docket Entry No. 94), recommending that Merck's motion for summary judgment on Young's claim (Docket Entry No. 38) be denied, Merck's motion for summary judgment on Collins' claim (Docket Entry No. 39) be granted, Merck's motion for summary judgment on Henderson's claim (Docket Entry No. 40) be denied, plaintiffs' separate motions to exclude

portions of Merck's summary judgment evidence (Docket Entry
Nos. 50, 52, 53) be denied, and Merck's motion to exclude
determination letters issued by the Equal Employment Opportunity
Commission (EEOC) (Docket Entry No. 65) be granted.  The parties
have submitted objections to the Magistrate Judge's findings
(Docket Entry Nos. 96 and 98), and plaintiffs have submitted
objections to Merck's objections to the Magistrate Judge's
recommendations (Docket Entry No. 102).  For the reasons explained
below, the court will sustain Merck's objection to the Magistrate
Judge's conclusion that "a fact issue exits with regard to whether
[Clay] Newlin [(Newlin)] lowered his score of Young's 'product and
disease knowledge' to a '2' after discussing with [Betsy] Cable
[(Cable)] the low score she gave Young in 'communication,'"[1]
overrule all of the other objections, and will adopt the Magistrate
Judge's Memorandum, Recommendation and Order (Docket Entry No. 94),
as amended by this Memorandum Opinion and Order.

## I.  **Standard of Review**

     Federal Rule of Civil Procedure 72(b) and 28 U.S.C.
§ 636(b)(1)(C) require the court to consider the objections of the
parties and make a _de novo_ determination of the portions of the

---

[1]Defendant's Objections to Magistrate's Memorandum,
Recommendation and Order, Docket Entry No. 98, p. 2 (quoting
Memorandum, Recommendation and Order, Docket Entry No. 94, p. 21).

Magistrate Judge's recommended disposition to which objections are raised.  See Fed. R. Civ. P. 72(b);[2] 28 U.S.C. § 636(b)(1)(C).[3]

## II.  Background

In early 2001 each of the plaintiffs, along with many other applicants, interviewed for positions as sales representatives with Merck.  Plaintiffs first attended an informal screening session in Houston, Texas, at which their basic qualifications for the job

---

[2]Fed. R. Civ. P. 72(b) provides in pertinent part:

Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

[3]28 U.S.C. § 636(b)(1)(C) provides:

the magistrate judge shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.  Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.  A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

were assessed by "screening teams."  Each plaintiff was subsequently scheduled for a formal interview in Dallas, Texas.

In Dallas each plaintiff was interviewed by two of Merck's managerial employees, usually business managers or staff recruiters.  Merck used a "targeted approach" in which the interviewers evaluated each candidate's ability on nine predetermined qualifications or "competencies:"  (1) ethics, values, and professionalism; (2) product and disease knowledge; (3) selling skills; (4) business management; (5) communication; (6) teamwork; (7) leadership; (8) motivational fit; and (9) impact.  Candidates were scored in each of the competencies on a scale of 1 to 5, 5 being the highest.  Each of the two interviewers was assigned particular competencies to test.  Each interviewer received a Hiring Event Guide that supplied a set of questions to be asked of the candidates, as well as a prescribed method for evaluating the candidate's answers.  The interviewers scored the candidates on a candidate selection summary sheet (CSS).  The interviewers were permitted to disagree on their assessments, but were required to agree on an overall score.  Based on their overall score, candidates were coded as "hire," "hold," or "reject."  Candidates coded "hire" were either offered a position or placed in a hiring pool used to fill future vacancies; candidates coded "hold" were also placed in a hiring pool; candidates labeled "reject" received no further consideration.

-4-

### III.  Magistrate Judge's Recommendations

Plaintiffs allege that Merck engaged in unlawful discrimination by failing to select them for pharmaceutical sales representative positions.  Young, an African-American male, contends he was rejected because of his race; Collins because of her sex; and Henderson, a female over the age of forty, because of both her sex and age.  In her Memorandum and Recommendation, the Magistrate Judge recommended that Merck's motion for summary judgment on Young's Title VII claim for race discrimination be denied, the motion for summary judgment on Collins' Title VII claim for sex discrimination be granted, the motion for summary judgment on Henderson's Title VII claim for sex discrimination and ADEA claim for age discrimination be denied, that plaintiffs' objections to Merck's summary judgment evidence be overruled, and that Merck's motion to exclude EEOC determination letters be granted.

### IV.  Plaintiffs' Objections

Plaintiffs object to the Magistrate Judge's recommendation that summary judgment be granted on Collins' Title VII claim for sex discrimination on grounds that the recommendation conflicts with the Fifth Circuit's opinion in Rachid v. Jack-in-the-Box, Inc., 376 F.3d 305 (5th Cir. 2004), and object to the Magistrate Judge's failure to consider the EEOC's determinations of violation

-5-

for each of the three plaintiffs.[4]  After considering plaintiffs'
objections and making a <u>de novo</u> determination of the portions of
the Magistrate Judge's recommended disposition to which these
objections were raised, the court concludes that summary judgment
in favor of Merck on Collins' claim is appropriate for the reasons
explained by the Magistrate Judge.  <u>See</u> Fed. R. Civ. P. 72(b), 28
U.S.C. § 636(b)(1)(C).  The court also concludes that Merck's
motion to exclude the EEOC's determination letters was properly
granted for the reasons stated by the Magistrate Judge and because
the letters at issue are determinations of violations as opposed to
determinations of probable cause.  <u>See</u> <u>EEOC v. Manville Sales
Corp.</u>, 27 F.3d 1089, 1095 (5th Cir. 1994), <u>cert. denied</u>, 115 S.Ct.
1252 (1995) (distinguishing EEOC's determination of probable cause
from determination of violation, and affirming district court's
exclusion of an EEOC determination of violation in ADEA suit).
Accordingly, the court will overrule the plaintiff's objections to
the Magistrate Judge's Memorandum, Recommendations and Order of
April 29, 2005, and accept and adopt the Magistrate Judge's
recommendations to grant Merck's motion for summary judgment on
Collins' Title VII claim (Docket Entry No. 39), and to grant
Merck's motion to exclude EEOC determination letters (Docket Entry
No. 65).

---

[4]See Plaintiffs' Objections to the Memorandum, Recommendation
and Order, Docket Entry No. 96, p. 1 ¶¶ 2-3.

## V.  **Merck's Objections**

Merck objects to the Magistrate Judge's recommendation that its motions for summary judgment be denied on the claims alleged by Young and Henderson.[5]  Plaintiffs object to Merck's objections as late filed and as attempts to supplement the record with new evidence in violation of the dispositive motions deadline contained in the court's Docket Control Order.[6]

## A.  **Plaintiff's Objections to Merck's Objections**

### 1.  Late Filing

Asserting that Merck filed it objections on May 16, 2005, plaintiffs "object to the late filed objections."[7]  Merck argues that its objections were timely filed.  The court agrees.

Section 636(b)(1)(C) provides that "the magistrate judge shall file [her] proposed findings and recommendations . . . with the court and a copy shall forthwith be mailed to all parties."  28 U.S.C. § 636(b)(1)(C).  Federal Rule of Civil Procedure 6(e) provides Merck three additional days in which to file its objections following service of the magistrate judge's

---

[5]See Defendant's Objections to Magistrate's Memorandum, Recommendation and Order, Docket Entry No. 98.

[6]See Plaintiffs' Objection and Response to Defendant's Objections to Magistrate's Memorandum, Recommendation and Order, Docket Entry No. 102, p. 1 ¶¶ 2-3.

[7]Id. at p. 1 ¶ 2.

-7-

recommendations by mail.[8]   The Advisory Committee Notes to Subdivision (b) of Federal Rule of Civil Procedure 72 expressly states that "[t]he 10-day period . . . is subject to Rule 6(e) which provides for an additional 3-day period . . . ."   Under Rule 6(a), Merck is also credited with weekends and holidays because the prescribed period for filing objections to the Magistrate Judge's recommendations is less than eleven days.

---

[8]Rule 6(e) of the Federal Rules of Civil Procedure states:

> Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party under Rule 5(b)(2)(B), (C), or (D), 3 days shall be added to the prescribed period.

Rule 6(e) also applies if service of the Magistrate Judge's recommendations was made via the court's electronic filing system. Local Rule 5.1 provides that "[t]he notice of electronic filing that is automatically generated by the Court's electronic filing system constitutes service of the document on those registered as filing users of the system."   S.D. Tx. R. 5.1 (effective September 7, 2004). Like service by mail, which is complete upon mailing, service by electronic means is complete upon transmission under Fed. R. Civ. P. 5(b)(2)(D). Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure states:

> (2) Service under Rule 5(a) is made by:
>
> . . .
>
> > (D) Delivering a copy by any other means, including electronic means, consented to in writing by the person served.   Service by electronic means is complete on transmission; service by other consented means is complete when the person making service delivers the copy to the agency designated to make delivery. If authorized by local rule, a party may make service under this subparagraph (D) through the court's transmission facilities.

Rule 6(a) also provides that "the day of the act . . . from which the designated period of time begins to run shall not be included," and the last day "shall be computed, unless it is a Saturday, a Sunday, or a legal holiday . . ."[9]  Applying these rules,

> the response periods to magistrates' recommendations should be computed by first applying the less-than-eleven day provision of Rule 6(a) to the ten day time period prescribed by Rule 72(b), thereby excluding any intervening Saturdays, Sundays, and legal holidays.  The date of service shall be the date on which the Clerk of Court mails out the magistrate's recommendation. [citations omitted]  After establishing an initial response date by this method, three additional days should be added pursuant to Rule 6(e).  If the final day should fall on a weekend or legal holiday, the objection should be due on the first official business day thereafter.

Vaquillas Ranch Company, Ltd. v. Texaco Exploration and Production, Inc., 844 F.Supp. 1156, 1159 (S.D. Tex. 1994) (quoting Nalty v. Nalty Tree Farm, 654 F.Supp. 1315, 1317-1318 (S.D. Ala. 1987)).

---

[9]Rule 6(a) of the Federal Rules of Civil Procedure provides:

In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the district court inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.  When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. . .

The Magistrate Judge's recommendations were signed on Friday, April 29, 2005, and notations on the clerk's docket sheet state "[p]arties notified" and "[o]bjections to M&R due by 5/13/2005."[10] Under Rule 5(b) service of the Memorandum, Recommendation and Order was complete on Friday, April 29, 2005, and that day is therefore excluded from the computation of time under Rule 6(a).  The first day computed is Monday, May 2, 2005.  Monday, May 2, 2005, through Friday, May 6, 2005, are days one through five, respectively. May 7 and 8, 2005, are a weekend.  Monday, May 9, 2005, through Friday, May 13, 2005, are days six through ten.  Merck then has three additional days for service by mail or electronic means under Rule 6(e).  Saturday and Sunday, May 14 and 15, 2005, are days one and two of that additional time.  Day three falls on Monday, May 16, 2005, so that is the day that Merck's objections were due. Since Merck filed its objections on May 16, 2005, Merck's objections were not late filed.  <u>See</u> <u>Vaquillas Ranch</u>, 844 F.Supp. at 1158-1160.  Accordingly, plaintiffs' objection to Merck's objections as late filed will be overruled.

    2.  <u>New Evidence</u>

Plaintiffs object that Merck has attempted to supplement the record with new evidence in violation of the Dispositive Motions

---

[10]See Docket Entry No. 94 on Clerk's Docket Sheet for Case No. 4:03cv1213.

Deadline established by the court's Docket Control Order.[11]
Asserting that Rule 72(b) expressly contemplates the introduction
of new evidence, Merck argues that the court should consider the
detailed information about Young's academic record submitted in
support of its objections because Merck first raised the issue of
Young's poor grades in its opening summary judgment brief, and
because it is now merely providing additional details concerning an
uncontroverted fact in response to a new issue raised by the
Magistrate Judge's recommendation.[12]   Since the court has not
considered the detailed information about Young's academic record
in reaching the conclusions stated in this Memorandum Opinion and
Order, plaintiffs' objection to Merck's submission of those records
will be overruled as moot.

**B.   Merck's Objections**

     Merck objects to the Magistrate Judge's recommendation that
its motions for summary judgment be denied on the claims alleged by
Young and Henderson.[13]

––––––––––––––––––––

     [11]See Plaintiffs' Objection and Response to Defendant's
Objections to Magistrate's Memorandum, Recommendation and Order,
Docket Entry No. 102, p. 1 ¶ 3.

     [12]See Defendant's Reply to Plaintiffs' Objection and Response
to Defendant's Objections to Magistrate's Memorandum, Recommenda-
tion and Order, Docket Entry No. 106, pp. 3-5 ¶¶ 5-9.

     [13]See Defendant's Objections to Magistrate's Memorandum,
Recommendation and Order, Docket Entry No. 98.

1.   Henderson

After considering Merck's objections to the Magistrate Judge's recommendation that its motion for summary judgment on the Title VII and ADEA claims alleged by Michelle Henderson should be denied, and after making a de novo determination of the portions of the Magistrate Judge's recommended disposition to which these objections were raised, the court concludes that summary judgment in favor of Merck is inappropriate for the reasons explained by the Magistrate Judge.  The court concludes that Merck's objection to the admissibility of the age-related comment that Henderson testified Tami Ameen attributed to Debbie Winn should be overruled because it relates to Henderson's and not to Ameen's credibility, which will be weighed by the jury at the upcoming trial.[14]  See Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C).  Accordingly, the court will overrule Merck's objections to the Magistrate Judge's recommendation regarding Henderson's claims, and accept and adopt her recommendation to deny Merck's motion for summary judgment on Henderson's claims (Docket Entry No. 40).

2.   Young

After considering Merck's objections to the Magistrate Judge's recommendation that its motion for summary judgment on Young's

---

[14]See Defendant's Brief in Support of Its Objections to Magistrate's Recommended Order Denying Merck's Motion for Summary Judgment on Plaintiff Michelle Henderson's Claims, Docket Entry No. 100.

Title VII claim should be denied, and after making a <u>de novo</u> determination of the portions of the Magistrate Judge's recommended disposition to which these objections were raised, the court is persuaded that Merck's motion for summary judgment should be denied albeit for different reasons than those stated by the Magistrate Judge. <u>See</u> Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C).

    (a)  Background

    Merck moved for summary judgment on Young's Title VII race discrimination claim contending that it had legitimate, non-discriminatory reasons for not hiring Young, i.e., his interview scores were too low, and other candidates who received higher scores were objectively better qualified for the position.  Young contends that this explanation is false and that Merck refused to hire him because he is African-American.

    On February 20, 2001, Young interviewed with Cable, a Merck business manager, and Newlin, a staffing consultant in Merck's Dallas regional office.  The CSS reveals that Cable and Newlin gave Young scores ranging from "2" to "4" in the various competencies. Cable gave Young a score of "2" in "communication," and Newlin gave Young a score of "2" in the "product disease and knowledge" competency.  Based on the score of "2" that he received in two separate competencies, Young was classified as a "reject" candidate.  The only candidate selected for hire from the group interviewed by Cable and Newlin was Tara Griffith, a candidate who

-13-

received an overall score of "4.8."  Young's overall score of "3.4"
made him third out of six interviewees, behind Griffith and Brady
Cox, who received a "3.8" overall score, and was classified as a
"hold."  The Magistrate Judge recommended that Merck's motion for
summary judgment on Young's Title VII claim be denied after
concluding that Cable's testimony raised a fact issue as to whether
the score of "2" that she gave Young for communication was
influenced by a discriminatory comment made by Debbie Winn, one of
the members of the initial screening team in Houston, that Young
"spoke too black," and that "[i]n light of the evidence in the
record showing that the interviewers routinely altered their scores
to reach a consensus on a candidate" that "a fact issue exists with
regard to whether Newlin lowered his score of Young's 'product and
disease knowledge' to a '2' after discussing with Cable the low
score that she gave Young in 'communication.'"[15]  Merck argues that
this conclusion lacks evidentiary support.[16]

        (b)  Analysis

    Young argues that an impermissible consideration of race
motivated Merck's decision not to hire him.  Young contends that

_____

        [15]Docket Entry No. 94, p. 21.

        [16]See Defendant's Brief in Support of Its Objections to
Magistrate's Recommended Order Denying Merck's Motion for Summary
Judgment on Plaintiff Alfred Young's Claims, Docket Entry No. 99,
pp. 18-19; Defendant's Reply to Plaintiff's Objection and Response
to Defendant's Objections to Magistrate's Memorandum, Recommenda-
tion and Order, Docket Entry No. 106, p. 5.

Winn made derogatory race-based remarks about him during the screening stage and that these comments tainted his interview in Dallas with Cable and Newlin.  Young offers evidence that Winn told the screening team members he should not be sent on to the interview in Dallas because he "spoke too black" and had "ghetto slang."  Young also offers evidence that before his interview in Dallas, Winn told Cable that he "spoke too black."  Young argues that Winn's "spoke too black" comment influenced Cable's decision to give him a score of "2" for the communication competency and, thus, directly affected his Dallas interviewers' conclusion that he should not be hired.  Even though Winn was not one of the final decision makers regarding Young's application for employment by Merck, the Magistrate Judge concluded that the evidence regarding Cable's score raises a fact issue because it satisfies the two criteria required for the cat's paw analysis, i.e., (1) that a co-worker exhibited discriminatory animus, and (2) the same co-worker possessed leverage, or exerted influence, over the titular decision maker.  See Russell v. McKinney Hospital Venture, 235 F.3d 219, 226-229 (5th Cir. 2000).  For the reasons explained by the Magistrate Judge, the court agrees that a fact question exits on this issue.

Merck contends, however, that even if Cable's ability to give Young an unbiased evaluation was compromised by Winn's "spoke too black" comment, the score of "2" that Young received from Newlin in

product and disease competency provided an independent basis for Young's rejection.[17]   The Magistrate Judge concluded that the evidence regarding Newlin's score raises a fact question because since it is undisputed that interviewers sometimes altered their scores to reach a consensus, and Newlin could have lowered Young's score for "product and disease knowledge . . . after discussing with Cable the low score she gave Young in communication."[18]

It is undisputed, however, that Cable and Newlin each interviewed Young separately.[19]   The CSS indicates that Young was evaluated on product and disease knowledge by interviewer #2 but not by interviewer #1;[20] Newlin testified that he was interviewer #2;[21] and Cable, Newlin, and Alex Petrovich, Merck's senior business director for the Texas region, all testified that scores were subject to change only when both interviewers evaluated the

---

[17]Defendant's Brief in Support of Its Objections to Magistrate's Recommended Order Denying Merck's Motion for Summary Judgment on Plaintiff Alfred Young's Claim, Docket Entry No. 99, p. 14.

[18]Docket Entry No. 94, p. 21.

[19]Newlin Deposition, Exhibit 4 attached to Docket Entry No. 99, p. 25.

[20]See Exhibit A attached to Declaration of Clay Newlin, Exhibit 10 accompanying Defendant's Brief in Support of Its Objections to Magistrate's Recommended Order Denying Merck's Motion for Summary Judgment on Plaintiff Alfred Young's Claims, Docket Entry No. 99.

[21]Newlin Deposition, Exhibit 4 attached to Docket Entry No. 99, p. 25; Newlin Declaration, Exhibit 10 attached to Docket Entry No. 99, ¶ 7.

candidate on the same competency and disagreed about a score.[22]  The
court is therefore persuaded that there is no evidence from which
a reasonable jury could conclude that Newlin lowered Young's score
for product and disease knowledge after caucusing with Cable about
the score she gave Young for communication skills.[23]  Accordingly,
the court concludes that the evidence does not raise the fact issue
identified by the Magistrate Judge regarding the score of "2" that
Newlin gave Young for product and disease knowledge.  Nevertheless,
the court is not persuaded that Merck is entitled to summary
judgment on Young's claim.

As these facts demonstrate and Young argues, Young's case is
a mixed-motive case, i.e., a case involving an employment decision
based on a "mixture of legitimate and illegitimate motives."  See
Desert Palace Inc. v. Costa, 123 S.Ct. 2148 (2003); Price
Waterhouse v. Hopkins, 109 S.Ct. 1775 (1989).

> In a mixed-motive case involving an employment decision
> based on a "mixture of legitimate and illegitimate
> motives," the plaintiff need only prove that the

---

[22]Defendant's Brief in Support of Its Objections to
Magistrate's Recommended Order Denying Merck's Motion for Summary
Judgment on Plaintiff Alfred Young's Claims, Docket Entry No. 99,
p. 3 (citing Cable's first Deposition, Exhibit 2 attached to Docket
Entry No. 99, pp. 21-22); Newlin Deposition, Exhibit 4 attached to
Docket Entry No. 99, pp. 36-37; Petrovich Deposition, Exhibit 5
attached to Docket Entry No. 99, pp. 53-54).

[23]Even Cable's testimony, which the Magistrate Judge cites in
support of her conclusion that a fact question exists on this
issue, addresses only those situations in which interviewers
disagree about a candidate's rating in the same area.  See Docket
Entry No. 94, p. 21 (citing Cable's first Deposition, Exhibit 2
attached to Docket Entry No. 99, pp. 21-22).

> illegitimate motive was a motivating factor in the
> decision.   Once the plaintiff meets this burden, the
> employer may seek to avoid liability by proving that it
> would have made the same employment decision in the
> absence of the illegitimate discriminatory motive.   The
> employer's burden on this score is effectively that of
> proving an affirmative defense.   [citations omitted]

Machinchick v. PB Power, Inc., 398 F.3d 345, 355 (5th Cir. 2005)

(citing Rachid, 376 F.3d at 310, and Mooney v. Aramco Servs. Co.,

54 F.3d 1207, 1216-1217 (5th Cir. 1995)).   See also Price

Waterhouse, 109 S.Ct. at 1788 ("[T]he employer's burden is most

appropriately deemed an affirmative defense:  the plaintiff must

persuade the fact finder on one point, and then the employer, if it

wishes to prevail, must persuade it on another.").

> By requiring the plaintiff to prove that discrimination
> was a motivating factor, and then placing the burden of
> proving that the employment decision would have been made
> even absent discrimination on the employer, we
> effectively employ a "but-for" standard of causation.
> However, once the presence of discrimination as a motive
> has been established, the burden of persuasion rests with
> the employer to disprove that such discrimination had a
> determinative or causal effect upon its decision.

Machinchick, 398 F.3d at 355 & n.33 (citing Price Waterhouse, 109

S.Ct. at 1790 (observing that "a court that finds for the plaintiff

under this standard has effectively concluded that an illegitimate

motive was a 'but-for' cause of the employment decision")).   Since

Young's evidence concerning Cable would allow a reasonable jury to

conclude that the "2" score she gave him for communication was

motivated by racial bias, Merck is entitled to judgment as a matter

of law only if it can establish that it would have rejected Young

even absent Cable's consideration of his race.   Id.

-18-

Merck argues that it would have rejected Young even absent Cable's consideration of his race because a score of "2" on even a single competency would cause a candidate to be rejected,[24] and because there is no evidence that Cable influenced Newlin or that given Young's poor academic performance Newlin would have given Young a score higher than "2" in product and disease knowledge.[25] While the court agrees that Young has failed to present any evidence from which a reasonable fact-finder could conclude that the score of "2" that Newlin gave Young for product and disease knowledge were motivated by racial bias, Merck's evidence does not support its claim that a score of "2" in even a single competency would have caused Young to be rejected.

Merck argues that the decision to reject Young "was made by Cable and Newlin."[26]  While both Cable and Newlin testified that a candidate who received a score of "2" in even one competency was not likely to be hired, neither testified that a score of "2" in a single competency mandated a candidate's rejection.  To the contrary, Cable testified that a single score of "2" would have mandated a rejection under an old set of standards, but that the

---

[24]Defendant's Brief in Support of its Objections to Magistrate's Recommended Order Denying Merck's Motion for Summary Judgment on Plaintiff Alfred Young's Claims, Docket Entry No. 99, p. 14.

[25]Id. at pp. 14-19.

[26]Id. at p. 4 (citing Declaration of Clay Newlin dated August 30, 2004, Exhibit 10 attached to Docket Entry No. 99, ¶ 7).

-19-

standards applied at the time of Young's interview required
interviewers to reach consensus on the scores given to candidates,
and Newlin testified that Young was rejected because he received
scores of "2" in two separate competencies.  Cable testified that

> . . . [i]t used to be that if a candidate got in any
> one of those skill sets a 2 or lower, that would
> automatically disqualify them from employment or being
> extended an offer without having seen the other two
> managers' evaluations.
>
> Upon this new process, the — with the room and
> everyone coming in with their separate sets of numbers,
> there were indeed people that sometimes would be
> pressuring other managers to — if there was a range of
> scores, to do on the upper end or the lower end depending
> on what their particular motivations were. . .[27]

Cable also stated that "in the older set of standards, if someone
got a 2, for example, in any one of those categories, they were
considered 'not hireable.'"[28]   Newlin declared under penalty of
perjury that

> [b]ased on the quality of Mr. Young's answers, I gave him
> a score of "2" in the category of product and disease
> knowledge, and Ms. Cable gave him a score of "2" in
> communication skills.  Under the scoring system we had at
> the time, a candidate who received a "2" in even one
> category was highly unlikely to be considered hireable.
> Mr. Young received ratings of "2" in two categories.  For
> this reason, we deemed him a "reject" candidate.[29]

---

[27]Cable Deposition of June 7, 2004, Exhibit 2 attached to
Docket Entry No. 99, pp. 21-22.

[28]Id. at p. 42.

[29]Declaration of Clay Newlin dated August 30, 2004, Exhibit 10
attached to Docket Entry No. 99, ¶ 7.

-20-

This evidence offered by Merck shows that while a score of "2" in even one competency had once been cause to reject a candidate, this was not the case when Young was interviewed and was not the reason that Young was rejected.  Since Newlin's uncontradicted testimony is that Young was rejected because he received a score of "2" in two competencies, the court concludes that Merck has failed to show that it is entitled to judgment as a matter of law because it would have rejected Young based solely on the score of "2" that Newlin gave him for product and disease knowledge and that he would thus have been rejected even absent any racial bias that may have tainted Cable's assessment of his communication skills.[30]

    (c)  Conclusions

For the reasons explained above the court concludes that Young has raised a genuine issue of material fact concerning whether Cable's assessment of his communication skills was tainted by racial bias, and that Merck has failed to present evidence establishing that it is entitled to judgment as a matter of law

---

[30]Although Merck also cites the testimony of Bobby Griffin and Emil Prendes in support of its argument that a score of "2" in even one competency would have mandated Young's rejection, Griffin stated only that "[c]andidates who received less than a "3" on even one competency were highly unlikely to be considered hireable." Declaration of Bobby Griffin, Exhibit 8 attached to Docket Entry No. 99, ¶ 9.  While Prendes testified that a candidate who received a score of "2" in any category would be deemed unhireable, he was not a decision maker with respect to Young.  Prendes Deposition, Exhibit 6 attached to Docket Entry No. 99, pp. 13 and 21.

because the score of "2" that Newlin gave Young for product and disease knowledge was, by itself, cause to reject his candidacy for the position of sales representative. Accordingly, the court will sustain Merck's objection to the Magistrate Judge's recommendation regarding Young's Title VII claim, but will nevertheless deny Merck's motion for summary judgment on Young's claim (Docket Entry No. 40). Since, however, Young argues only that had he been fairly evaluated without the taint of a racial bias "a jury could find he would have received higher scores and would have been deemed a hireable candidate for a Merck drug representative," and does not argue that he would have been hired, the court is unclear what, if any, damages Young will be able to prove at trial.

### VI.  Conclusions and Order

After considering the objections of the parties and making a de novo determination of the portions of the Magistrate Judge's recommended disposition to which objections were raised, Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C), the court concludes that plaintiffs' Objections to the Magistrate Judge's Memorandum, Recommendation and Order (Docket Entry No. 96) are **OVERRULED,** Merck's Objections to the Magistrate Judge's Memorandum, Recommendation and Order (Docket Entry No. 98) are **OVERRULED IN PART** as pertains to Henderson's claims, and **SUSTAINED IN PART** as pertains to Young's claim but Merck's motion for summary judgment

-22-

on Young's Title VII is nevertheless **DENIED**, Plaintiffs' Objections to Defendant's Objections to the Magistrate's Memorandum, Recommendation and Order (Docket Entry No. 102) are **OVERRULED**, and the Magistrate Judge's Memorandum, Recommendation and Order (Docket Entry No. 94) is **ADOPTED** as **AMENDED** by this Memorandum Opinion and Order. Given the age of this case and the court's other commitments, the court intends to set this case for trial beginning on August 1, 2005, at the upcoming July docket call, subject to any previously scheduled vacations of trial counsel.

The court's Order referring this case to Magistrate Judge Nancy K. Johnson (Docket Entry No. 46) is **VACATED**.

**SIGNED** at Houston, Texas, on this the 20th day of June, 2005.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-23-